UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

CECILE GOGOL,

                         Plaintiff,

        - against -                                        **OPINION AND ORDER**

THE CITY OF NEW YORK; NEW YORK                              15 Civ. 5703 (ER)
POLICE DEPARTMENT OFFICER ("P.O.")
AHMED ABDALLA (SHIELD NO. 7927) and
POLICE OFFICER JOHN DOE, in their individual
capacities,

                         Defendants.

───────────────────────────────────────

Ramos, D.J.:

        Cecile Gogol ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against the City

of New York, and two New York City Police officers, alleging false arrest, denial of fair trial

based on fabrication of evidence, First Amendment retaliation, and municipal liability.  Before

the Court is Defendants' motion for summary judgment seeking dismissal of the Complaint in its

entirety.

        For the following reasons, Defendants' motion is GRANTED in part and DENIED in

part.

I.      **Background**[1]

        On March 15, 2015, Plaintiff left her place of employment at 52nd Street and 7th

Avenue, and walked north on 7th Avenue towards 57th Street.  Defs. 56.1 Stmt. ¶ 11.  When she

---

[1] The following facts are based on Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs. 56.1 Stmt."), Doc. 38, Plaintiff's Local Rule 56.1 Response in Opposition to Motion for Summary Judgment ("Pl. 56.1 Counterstmt."), Doc. 42, and the respective exhibits to the Declaration of Maria Fernanda DeCastro ("DeCastro Decl."), Doc. 37, and the Declaration of Gillian Cassell-Stiga ("Cassell-Stiga Decl."), Doc. 40.  The facts are undisputed unless otherwise noted.

arrived at 57th Street, she noticed that it was blocked. *Id.* at ¶ 12. In the middle of 57th Street, there were police cars, a fire truck, policemen and firemen. *Id.* at ¶ 13; Pl. 56.1 Counterstmt. ¶ 7. The area had apparently been sealed off because debris was falling from a building on the north side of 57th Street due to its faulty façade. Defs. 56.1 Stmt. ¶¶ 3, 5; Pl. 56.1 Counterstmt. ¶ 5.

Plaintiff was standing on the sidewalk southeast of the intersection in a crowd of approximately 60-70 people. Defs. 56.1 Stmt. ¶ 16; Pl. 56.1 Counterstmt. ¶ 8. She proceeded to move a few feet into the crowd, closer to the blocked off area. Defs. 56.1 Stmt. ¶ 17. She then observed police officer Ahmed Abdalla ("Abdalla") approach the area where the crowd was standing. *Id.* at ¶ 18. Abdalla stopped approximately five feet away from Plaintiff. *Id.* at ¶¶ 19, 20. At that point, both Abdalla and Plaintiff were on the sidewalk of 57th Street facing the police tape, approximately 15 feet away from the perimeter. *Id.* at ¶ 22; Pl. 56.1 Counterstmt. ¶¶ 8 10.

The parties dispute whether Plaintiff approached Abdalla to ask a question, or whether Abdalla approached Plaintiff to ask her to move. Defs. 56.1 Stmt. ¶¶ 10, 21; Pl. 56.1 Counterstmt. ¶ 10. What Abdalla was doing when he encountered Plaintiff is further disputed. Defendants assert that Abdalla was attempting to assist the fire department by keeping the area secure, and moving the crowd so that the fire department could expand the perimeter around the building. Defs. 56.1 Stmt. ¶¶ 6-8. Plaintiff disputes that Abdalla was attempting to do any of the above when they interacted. She states that the police tape had already been set up along the northern perimeter of the sidewalk, both Plaintiff and Abdalla were standing fifteen feet away from the perimeter on the southeast corner of the intersection, and that Abdalla was unaccompanied by anyone else. Pl. 56.1 Counterstmt. ¶¶ 6-8.

During Plaintiff and Abdalla's interaction, Plaintiff asked, "What's going on?" and Abdalla responded by telling her to step away. Defs. 56.1 Stmt. ¶¶ 24-25. In response, Plaintiff said, "Okay. But what's going on?" to which Abdalla again told Plaintiff to step away. Pl. 56.1 Counterstmt. ¶¶ 26-28. Plaintiff then turned and walked away from Abdalla, but paused two to three feet away from where Abdalla was standing and stated, "Courtesy and respect," to Abdalla. Defs. 56.1 Stmt. ¶¶ 29-30. The statement was presumably a suggestion, perhaps snide, that Abdalla had not lived up to the NYPD motto, "Courtesy, Professionalism, Respect."

Plaintiff alleges that she proceeded to walk 20-25 feet to 7th Avenue and had turned the corner when Abdalla followed her and asked for her identification. Pl. 56.1 Counterstmt. ¶ 31. In response, Plaintiff asked if she was under arrest. Defs. 56.1 Stmt. ¶ 32. Abdalla reiterated his request to see her identification. *Id.* at ¶ 33. Plaintiff told him that she knew her rights and asked again whether she was under arrest. Pl. 56.1 Counterstmt. ¶ 34. Abdalla stated that if she did not provide identification, he would arrest her, at which point Plaintiff placed her hands behind her back and Abdalla placed her in handcuffs. Defs. 56.1 Stmt. ¶¶ 35-36. Plaintiff was arrested on 7th Avenue, around the corner from where she initially interacted with Abdalla. Pl. 56.1 Counterstmt. ¶ 44.

After Plaintiff's arrest, she was transported to the 18th Precinct where she spent approximately two hours in custody. Defs. 56.1 Stmt. ¶¶ 38-39. She was then charged with obstructing governmental administration ("OGA") in the second degree pursuant to New York Penal Law § 195.05, and disorderly conduct pursuant to New York Penal Law §§ 240.20(2) and 240.20(3), and she was issued a desk appearance ticket that required her to appear in court on April 27, 2015. [2] *Id.*; Cassell-Stiga Decl. Ex. A.

---

[2] Approximately one week after Plaintiff's arrest, she filed a complaint with the Civilian Complaint Review Board. Defs. 56.1 Stmt. ¶ 41.

She was arraigned on the misdemeanor criminal charges on April 27, 2015. Cassell-Stiga Decl. Ex. A. On June 4, 2015, approximately two and a half months after the arrest, Abdalla signed a criminal complaint which stated, *inter alia*, that when he asked Plaintiff to "move away from the area, she did not move away from the area." Cassell-Stiga Decl. Ex. B at 1. On June 17, 2015, Plaintiff made a second court appearance during which she accepted an adjournment in contemplation of dismissal ("ACD") in the criminal case. Defs. 56.1 Stmt. ¶ 42; *see* DeCastro Decl. Ex. C ("Gogol Dep.") Tr. 86:19-87:12. The criminal case was subsequently dismissed on December 16, 2015. Cassell-Stiga Decl. Ex. C.

Meanwhile, on July 21, 2015, Plaintiff filed the instant Complaint. Doc. 1. On September 30, 2016, at the conclusion of discovery, Defendants filed the instant motion for summary judgment seeking to dismiss the Complaint in its entirety. Doc. 36. On July 20, 2017, oral argument was held before this Court ("Oral Argument"), after which the Court permitted the parties to submit supplemental briefing on the issue of what constitutes "deprivation of liberty" in connection with Plaintiff's denial of fair trial claim.

## II.    Legal Standard

### A.  Summary Judgment

Summary judgment is only appropriate where the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, [and] other materials" show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c)(1)(A). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011)

(citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322–23); *see also* Fed. R. Civ. P. 56(c)(1)(B). The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano,* 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials, or unsupported alternative explanations of facts. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *see also Senno,*

812 F. Supp. 2d at 467.  "The nonmoving party cannot defeat summary judgment by 'simply showing that there is some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal modifications omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322).  In that situation, there can be no genuine dispute as to any material fact, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 322-23.

### B.  42 U.S.C. § 1983

42 U.S.C. § 1983 grants a right of action to any "citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law.  42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must allege that:  (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was committed by a person acting under color of state law.  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).

## III.    Discussion

### A. False Arrest

The Second Circuit has explained that a Section "1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F .3d 149, 151 (2d Cir. 2006) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  In *Jaegly*, the Circuit stated that, "[i]n analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred."  *Id.* at 151–52 (citing *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)).  Under New York law, a plaintiff must prove:  (1) that the defendants intentionally confined plaintiff; (2) that plaintiff was conscious of the confinement and did not consent to it, and (3) that the confinement was not otherwise privileged. *See Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 373 N.Y.S.2d 87, 335 N.E.2d 310, 314 (N.Y. 1975)).

Defendants do not dispute that they intentionally confined Plaintiff, or that Plaintiff was conscious of the confinement and did not consent to it.  The only disputed element is whether the confinement was "otherwise privileged."  If Abdalla had probable cause to arrest Plaintiff or if he is protected by the doctrine of qualified immunity, then the confinement is privileged because the existence of probable cause or qualified immunity constitutes a complete defense to a § 1983 false arrest claim.  *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d. Cir. 1996)); *see also Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (to avoid liability for a claim of false arrest, an arresting officer may demonstrate that either:  (1) he had probable cause for the arrest; or (2) he is protected by qualified immunity).

## 1. Probable Cause

The existence of probable cause may be determined as a matter of law on summary judgment where there is no material dispute as to the relevant events and knowledge of the officers. *See Weyant*, 101 F.3d at 852. "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.*[3] When determining whether probable cause exists, courts are to "consider those facts *available to the officer* at the time of the arrest and immediately before it" and must render a decision based upon "the totality of the circumstances." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted) (emphasis in original); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest"). "Defendants bear the burden of establishing probable cause for an arrest as an affirmative defense." *Caravalho v. City of N.Y.*, No. 13 Civ. 4174 (PKC) (MHD), 2016 WL 1274575, at *5 (S.D.N.Y. Mar. 31, 2016). Defendants assert that there was probable cause to arrest Plaintiff for obstructing governmental administration pursuant to New York Penal Law § 195.05, and disorderly conduct pursuant to New York Penal Law § 240.20(6). Although Plaintiff was charged with disorderly conduct in violation of § 240.20(2) and § 240.20(3), not § 240.20(6), Defendants do not argue in the instant motion that there was probable cause for Plaintiff's arrest under § 240.20(2) and § 240.20(3).

---

[3] The validity of an arrest does not depend upon a finding that the arrested person is guilty. *Cf. Lee v. Sandberg*, 136 F.3d 94, 102-103 (2d Cir. 1997) (explaining that the circumstances giving rise to probable cause exist independently of the ultimate validity of the allegations within a given complaint); *see also Mesa v. City of N.Y.*, No. 09 Civ. 10464 (JPO), 2013 WL 31002, at *10 (S.D.N.Y. Jan. 3, 2013) ("[F]alse arrest and imprisonment turn on the validity of the *initial* detainment, rather than on the *ultimate disposition* of the charges, as probable cause forms the heart of the inquiry, rather than the eventual result at trial.") (emphasis in original).

### a. Obstruction of Governmental Administration

Under New York law, OGA has four elements: "(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference." *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010) (citations omitted); *see also People v. Stumpp*, 129 Misc.2d 703, 493 N.Y.S.2d 679, 680 (Dist. Ct. 1985). New York courts have further held that the official function being performed must be one that was "authorized by law." *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995); *see also United States v. Olavarria*, No. 09 CR. 870 (PGG), 2011 WL 1529190, at *7 (S.D.N.Y. Apr. 20, 2011) ("A defendant may not be convicted of obstructing governmental administration or interfering with an officer in the performance of an official function, however, unless it is established that the police were engaged in authorized conduct.") (internal modifications omitted).

Defendants contend that Plaintiff's arrest was justified because she interfered with Abdalla's authorized conduct when she failed to obey the initial direct order to step back. [4] The undisputed facts, however, demonstrate that she was in the process of obeying Abdalla's instruction to step away when he arrested her, which suggests that she was not interfering with any purported official function. When Abdalla first told Plaintiff to step back, Plaintiff states that instead of immediately stepping back she replied, "Okay. But what is going on?" Pl. 56.1 Counterstmt. ¶ 26. However, after Abdalla told her to step back a second time, Defendants concede for the purposes of the instant motion that she did step away. Defs. 56.1 Stmt. ¶¶ 26-29. Plaintiff alleges that it was only after she had walked 20-25 feet away that Abdalla followed her, asked her for her identification, and subsequently arrested her. Pl. 56.1 Counterstmt. ¶¶ 31, 34; Defs. 56.1 Stmt. ¶ 36. Construing these facts in the light most favorable to Plaintiff, the Court

---

[4] It is not disputed that Abdalla is a public servant.

cannot conclude that she failed to obey Abdalla's instruction. *See Bryant v. Serebrenik*, No. 15 Civ. 3762 (ARR) (CLP), 2016 WL 6426372, at *4 (E.D.N.Y. Oct. 28, 2016) (finding that summary judgement is not warranted because there is a dispute as to whether or not plaintiffs' children were attempting to comply with the officers' orders when they were arrested).

Defendants focus on Plaintiff's failure to step away immediately after Abdalla's initial request, claiming that her actions constitute interference since she caused Abdalla to divide his attention between the safety of those around the building and her. Mem. Supp. Mot. Summ. J. at 9; Reply Supp. Mot. Summ. J. at 2-3. But Plaintiff alleges that she never refused to step away, that she assented to Abdalla's first request by stating, "Okay," before again asking what was going on, and stepped away after she was told to do so the second time shortly thereafter. Opp. Mot. Summ. J. at 17; *see* Pl. 56.1 Counterstmt. ¶¶ 26, 29; *see also* Gogol Dep. Tr. 54:14-55:5. Indeed, Abdalla conceded the brevity of their interaction, testifying that Plaintiff only spoke to him for approximately 20-30 seconds in total before he asked her for her identification. DeCastro Decl., Ex. B ("Abdalla Dep.") Tr. 55:4-25, 56:21-23. There is no undisputed evidence in the record that demonstrates how Plaintiff's failure to comply with Abdalla's order during the brief time between Abdalla's first order and when Plaintiff stepped away interfered with his purported attempts to clear the area. *Rasin v. City of N.Y.*, No. 14 Civ. 5771 (ARR) (CLP), 2016 WL 2596038, at *7 (E.D.N.Y. May 4, 2016) (noting that "the sheer brevity of the incident leaves doubt as to whether plaintiff can truly be said to have been interfering"); *see also Zellner v. Summerlin*, 494 F.3d 344, 377 (2d Cir. 2007) ("[T]here was no evidence that [plaintiff's] conversation with [defendant]—lasting 20-30 seconds by [defendant's] own account—interfered with the police function in any way").

Moreover, even under Abdalla's version of the facts, he followed Plaintiff only after she stepped away, paused approximately two to three feet away from him and stated, "Courtesy and respect."[5] Defs. 56.1 Stmt. ¶¶ 30-31. Based on these facts, a reasonable factfinder could conclude that he had followed her and asked for her identification in retaliation for making that statement rather than for her brief, initial refusal to step away from the area. If the factfinder were to so find, it would constitute a defense to the charge because mere words cannot constitute OGA, and thus, there would be no probable cause to arrest Plaintiff based on her statement. *See Lee v. McCue*, No. 04 Civ. 6077 (CM), 2007 WL 2230100, at *5 (S.D.N.Y. July 25, 2007) ("[W]ords alone, even abusive ones, cannot give rise to probable cause to arrest for obstructing governmental administration as a matter of law"); *see also Dowling v. City of New York*, No. 11 Civ. 4954 (NGG) (RML), 2013 WL 5502867, at *8 (E.D.N.Y. Sept. 30, 2013) (noting "mere words" do not constitute OGA, and that an officer must have had reasonable belief that plaintiff was doing something other than complaining, swearing, and otherwise voicing his disagreement).

Defendants also allege that Abdalla had probable cause to arrest Plaintiff for OGA because she failed to provide identification. They argue that Plaintiff's purported refusal to step away warranted a reasonable suspicion-based investigatory stop, which ripened into probable cause when Plaintiff initially refused to supply Abdalla with her identification. Mem. Supp. Mot. Summ. J. at 9-10. This argument is contrary to clearly established law: "under New York law obstruction of governmental administration cannot rest upon refusal to provide identification." *Uzoukwu v. City of New York*, 805 F.3d 409, 416 (2d Cir. 2015). Thus,

---

[5] Plaintiff does not dispute that she paused two to three feet away from Abdalla and stated, "Courtesy and respect" to him. Pl. 56.1 Counterstmt. ¶ 30. However, she disputes that he followed her when she was two to three feet away from him. She states that when Abdalla followed her she was already 20-25 feet away from the scene. *Id.* at ¶ 31.

Plaintiff's failure to provide identification cannot give rise to probable cause to arrest her for OGA.

Parties further dispute whether Abdalla was actually performing an official function during his interaction with Plaintiff. New York state courts have held that since the *mens rea* of OGA is an intent to frustrate a public servant "in the performance of a specific function," it must be established that the public servant was "engaged in a specific action at the time of the physical interference, and *not just on duty*." *People v. Ford*, 53 Misc. 3d 318, 322, 36 N.Y.S.3d 374, 378 (N.Y.Crim.Ct. 2016) (finding the allegation that the officer was "performing a tour" to be insufficient to satisfy the performance of an official function element because it merely established that the officer was on duty) (emphasis in original); *see also People v. Vargas*, 179 Misc. 2d 236, 239-240, 684 N.Y.S.2d 848, 851 (Crim. Ct. 1998) (finding that the performance of an official function element was not satisfied because there was no indication of what activity the officer was engaged in at the time of the alleged interference). Defendants state that when Abdalla encountered Plaintiff, he was performing the following specific activities: attempting to assist the fire department, to keep the area secure, and to move the crowd. Defs. 56.1 Stmt. ¶¶ 7-8. Plaintiff disputes these facts. She asserts that when she spoke to Abdalla, the area had already been secured with police tape and that both Abdalla and Plaintiff were standing fifteen feet away from the tape. Pl. 56.1 Counterstmt. ¶ 8. She further notes that she did not observe Abdalla walking or standing with anyone else, that all the other policemen and firemen were on the other side of the police tape in the middle of 57th Street, and that Abdalla was not interacting with the firemen standing on the other side of the police tape, nor was he attempting to "move the crowd." *Id.* at ¶¶ 7-9. Plaintiff argues that the order to step back was only directed to her individually, and disputes that Abdalla was attempting to move her or anyone else in order to

clear the area because he was not standing with anyone else. Opp. Mot. Summ. J. at 11; Pl. 56.1 Counterstmt. ¶¶ 8-9. These competing versions of the facts raise a triable issue as to whether Abdalla was performing an official function when he interacted with Plaintiff.

**b. Disorderly Conduct**

Additionally, Defendants argue that there was probable cause to arrest Plaintiff for disorderly conduct. The offense of disorderly conduct has three elements: "(i) the . . . conduct must be 'public' in nature, (ii) it must be done with 'intent to cause public inconvenience, annoyance or alarm' or with recklessness as to 'a risk thereof,' and (iii) it must match at least one of the descriptions set forth in the [seven subsections of the] statute," New York Penal Law § 240.20. *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001).

Plaintiff was charged with disorderly conduct under § 240.20(2) and § 240.20(3). Under § 240.20(2), one commits disorderly conduct when one "makes unreasonable noise" with the requisite intent. N.Y. Penal Law § 240.20(2). A person is guilty of disorderly conduct under § 240.20(3) when, "[i]n a public place, he uses abusive or obscene language, or makes an obscene gesture," with the requisite intent. N.Y. Penal Law § 240.20(3).

In this motion, Defendants have abandoned the theory that there was probable cause to arrest Plaintiff for violations of either § 240.20(2) or § 240.20(3). Instead, Defendants argue that there was probable cause for her arrest under New York Penal Law § 240.20(6), with which she was never charged. Mem. Supp. Mot. Summ. J. at 10-11; Reply Supp. Mot. Summ. J. at 4. Defendants are correct that "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154. Rather, an arrest is lawful "so long as the officer ha[d] . . . probable cause to believe that the person arrested ha[d] committed any crime." *Zellner*, 494 F.3d

at 369 (citations omitted). Nevertheless, Plaintiff claims that there was no probable cause to arrest Plaintiff under § 240.20(6) either.

A person violates § 240.20(6) if he or she "congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse" with the requisite intent. N.Y. Penal Law § 240.20(6). "To show that there was probable cause to arrest for a violation of N.Y. Penal Law § 240.20(6), four elements must be established: (1) [the individual] congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted 'with intent to cause public inconvenience, annoyance or alarm' or with recklessness to the 'risk thereof.'" *Pesola v. City of New York*, No. 15 Civ. 1917 (PKC) (SN), 2016 WL 1267797, at *4 (S.D.N.Y. Mar. 30, 2016) (citing *United States v. Nelson*, No. 10 CR 414 (PKC), 2011 WL 1327332, at *3 (S.D.N.Y. Mar. 31, 2011) *aff'd*, 500 F. App'x 90 (2d Cir. 2012). Typically, a determination of probable cause under these circumstances hinges on two factors: "(1) the extent to which police communicated the orders to the crowd; and (2) whether individuals had an opportunity to comply with the orders." *Yorzinski v. City of New York*, No. 14 Civ. 1302 (GHW), 2016 WL 1270248, at *8 (S.D.N.Y. Mar. 31, 2016); *see also Dinler v. City of New York*, No. 04 Civ. 7921 (RJS) (JCF), 2012 WL 4513352, at *10-11 (S.D.N.Y. Sept. 30, 2012) (finding no probable cause because a single dispersal order that was not amplified could not reasonably have been expected to be heard by all of the marchers, and even if the order had been sufficiently loud, the marchers had no opportunity to comply with it).

Plaintiff disputes that there was probable cause to arrest her for a violation of § 240.20(6) on both legal and factual grounds. First, she contends that an order to disperse is legally distinct from an order to step away and that the order to disperse must be directed to more than one

14

individual.  Courts in this district have held that a lawful dispersal order is not given when an individual is merely ordered to leave an area because an order to disperse is "to separate, go different ways," and that while a group can disperse, an individual cannot.  *Higginbotham v. City of New York,* 105 F. Supp. 3d 369, 373 (S.D.N.Y. 2015) (internal modifications omitted); *see also Holmes v. City of New York*, No. 14 Civ. 5253 (LTS), 2016 WL 915332, at *3 (S.D.N.Y. Mar. 4, 2016).  Here, it is disputed whether Abdalla's order applied to anyone else aside from Plaintiff.  While Defendants allege that Abdalla was trying to move a larger group of people and had approached Plaintiff in order to move her as well, Defs. 56.1 Stmt. ¶¶ 8-10, Plaintiff states that Abdalla's request to "step away" was only directed to her in response to a question she had specifically posed to him, Gogol Dep. Tr. 53:21-54:8.  It is also disputed whether Abdalla's order to "step away" was an order "to separate, go different ways."  The district court in *Holmes* held that an order to the plaintiff individually to leave the roadway does not constitute an order to disperse.  2016 WL 915332, at *3.  Similarly, here, Plaintiff argues that she was merely asked to leave the area near the building with the faulty façade instead of being asked to separate or to go a different way from the rest of the crowd.  Pl. 56.1 Counterstmt. ¶ 43.

Defendants cite to a New York state court case, *People v. Yarborough*, 19 Misc. 3d 520, 525, 852 N.Y.S.2d 751 (Sup. Ct. 2008), in arguing that even an order to an individual can satisfy New York Penal Law § 240.20(6).  However, the dispersal order issued in *Yarborough* is distinguishable from Abdalla's order to step away.  In *Yarborough*, the defendant was screaming at others and was told by police to move away, i.e., disperse, from those other individuals.  *Id.*  In contrast, the undisputed facts here do not show that Plaintiff was asked to take any action in relation to others in the crowd, or that she as interacting with any other person in any way.  Though the parties have not asked the Court to consider the Second Circuit's recent decision in

*Kass v. City of New York*, No. 15-2053-CV, 2017 WL 3122289, at *5 (2d Cir. July 24, 2017), the case also merits mention.  In *Kass*, the Second Circuit held there was arguable probable cause to support arrest for violation of § 240.20(6) where the plaintiff, who was on the outside of a designated protest area speaking with two individuals inside the protest area, refused to comply with an order to either "keep walking" or enter the designated area.  *Id.* at *8-9.  However, unlike the facts here, the plaintiff in *Kass* was interacting and conversing with the protestors when he was asked to move, and the Second Circuit found that it was objectively reasonable for the officers to conclude that plaintiff had gathered with the two protestors he was conversing with.  *Id.* at *5, 8.  *Kass* is thus distinguishable from the facts here, which create a triable issue as to whether Abdalla's order was a valid order of dispersal.

Secondly, Plaintiff disputes that she did not, in fact, disobey Abdalla's order.  As discussed above, after his initial command, Plaintiff immediately stated her intent to comply by responding, "Okay."  Pl. 56.1 Counterstmt. ¶ 26.  She also states that she was arrested after she had complied with Abdalla's order to step away and moved a considerable distance away from the area.  Thus, even if Abdalla had issued a lawful order of dispersal, there was no probable cause for him to arrest her for disorderly conduct.  *See Mesa*, 2013 WL 31002, at *13 (declining to find arguable probable cause for failure to disperse where, "according to [plaintiff's] narrative, he was dispersing after the [police issued dispersal orders to the crowd gathered for a festival] . . . and it was the police that subsequently pursued and arrested him, despite his compliance").

### 2.  Qualified Immunity

Even if there is no probable cause for Plaintiff's arrest, Abdalla may be protected from the Section 1983 false arrest claim by the doctrine of qualified immunity.  The Second Circuit has stated "in the context of allegations of false arrest, that an arresting officer is entitled to

qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Lee*, 136 F.3d at 102 (quotations and internal modifications omitted). This more lenient standard has become known as arguable probable cause. *See id.*; *see also Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (applying arguable probable cause in a false arrest analysis). In deciding whether an officer's conduct was "objectively reasonable" for purposes of qualified immunity, courts look to the information possessed by the officer at the time of the arrest, but "do not consider the subjective intent, motives, or beliefs" of the officer. *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 106 (2d Cir. 2003).

Here, there are disputed facts that are material to determining whether there was probable cause. "[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Husain v. Springer*, 494 F.3d 108, 133 (2d Cir. 2007) (quoting *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir.1999)); *see also Smith v. Cnty. of Nassau*, No. 10 Civ. 4874 (MKB), 2015 WL 1507767, at *13 (E.D.N.Y. Mar. 31, 2015), *aff'd*, No. 15–1251–CV, 2016 WL 1040150 (2d Cir. Mar. 16, 2016) (finding that, given disputed issues of fact concerning "whether the officers could reasonably believe that Plaintiff knowingly occupied the [p]roperty unlawfully, qualified immunity cannot be resolved at this stage of the litigation."). The Court finds that it is premature to determine whether Defendants are entitled to qualified immunity on Plaintiff's false arrest claim, and thus, the claim survives summary judgment.

## B. First Amendment

A private citizen asserting a First Amendment claim against a public official must establish that: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)). Defendants do not dispute that Plaintiff has a right protected by the First Amendment, but argue that, based on the undisputed facts, Plaintiff cannot satisfy the second and third elements.

Defendants argue that Plaintiff cannot satisfy the second element because there was probable cause to arrest her. Defendants are correct that a First Amendment retaliation claim fails if there was probable cause for Plaintiff's arrest. *Fabrikant v. French*, 691 F.3d 193, 216 (2d Cir. 2012). However, there are triable issues of fact preventing a summary judgment at this juncture on whether there was probable cause, or even arguable probable cause.

Plaintiff argues that a reasonable factfinder could determine that she was arrested in retaliation for stating "Courtesy and respect," which was intended to criticize Abdalla. Opp. Mot. Summ. J. at 20. "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action," *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (citation omitted), and generally, "[t]emporal proximity is strong circumstantial evidence of improper intent," *Anderson v. State of New York, Office of Court Admin. of Unified Court Sys.*, 614 F.Supp.2d 404, 430 (S.D.N.Y. 2009). However, temporal proximity cannot be the sum total of plaintiff's proof as this circumstantial evidence is insufficient to survive summary judgment in the absence of more, and may be outweighed by other factors demonstrating the weakness of the claim. *See Ayers v. Stewart*, 101 F.3d 687, 687

(2d Cir. 1996) ("Given the weakness of his retaliation claim, [plaintiff's] reliance on . . . the proximity of the disciplinary action to his complaint . . . does not suffice to defeat summary judgment"); *see also Williams v. Goord*, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) ("Although the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment."). Here, the record shows that there was exceedingly close temporal proximity between Plaintiff's statement and the alleged retaliation because Abdalla followed Plaintiff only and immediately after she stated, "Courtesy and respect." Furthermore, Abdalla did not seek to arrest Plaintiff after she had failed to step away at his first request. These facts may suggest that Abdalla was motivated to follow Plaintiff and arrest her for what he perceived to be her criticism of him, and not because she initially disobeyed Abdalla's order to step away. Accordingly, a reasonable fact finder could conclude that Abdalla had arrested Plaintiff in retaliation for the exercise of her First Amendment rights.

Defendants also argue that Plaintiff cannot satisfy the third element since her speech was not chilled as a result of the alleged retaliation. The Second Circuit has held that a plaintiff can show "*either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm" to satisfy the third element. *Dorsett*, 732 F.3d at 160 (noting that that a loss of a government contract, additional scrutiny at border crossings, revocation of building permits, and refusal to enforce zoning laws are all adequate cognizable harms even in the absence of a chilling effect) (emphasis in original). One such concrete harm is being subject to criminal charges. *See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (in the context of a First Amendment claim, the issuance of three traffic tickets "was an injury in that it subjected [the plaintiff] to a state action requiring that she either appear in court, pay a

fine, or both"); *see also Higginbotham*, 105 F. Supp. 3d at 382 (plaintiff "has satisfied the third element by pleading that the defendants arrested him and charged him with disorderly conduct, and accordingly, he has adequately stated a First Amendment claim"). Since a reasonable factfinder, viewing the facts in the light most favorable to Plaintiff, could find that she was arrested and charged with OGA and disorderly conduct in retaliation for the exercise of her First Amendment rights, she has demonstrated injury sufficient to survive summary judgment.

### C. Fair trial

Fair trial claims based on fabrication of information are restricted to those cases in which an "(1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). The Second Circuit has held that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 130 (1997) (citations omitted).

The Second Circuit in *Ricciuti* and other courts in this district have found that a claim for denial of the right to a fair trial does not require that a trial was actually conducted. *See Schiller v. City of New York*, No. 04 Civ. 10178 (RJS) (JCF), 2008 WL 200021, at *10 (S.D.N.Y. Jan. 23, 2008) ("The limiting factor appears to be not whether the plaintiff went to trial but whether the falsification caused material harm"); *see also Soomro v. City of New York*, 174 F. Supp. 3d 806, 815 (S.D.N.Y. 2016) (citations omitted). "[T]he claim accrues when the officer forwards the

false information to the prosecutors." *Garnett v. Undercover Officer C0039*, No. 13 Civ. 7083 (GHW), 2015 WL 1539044, at *4 (S.D.N.Y. Apr. 6, 2015), *aff'd*, 838 F.3d 265 (2d Cir. 2016).

The parties do not dispute that Abdalla was an investigating official, but dispute whether he fabricated evidence that caused Plaintiff to suffer a deprivation of liberty. Plaintiff claims that Abdalla fabricated evidence when he wrote in the criminal complaint, which was forwarded to the prosecutor, that Plaintiff "did not move away from the area" when he asked her to. Opp. Mot. Summ. J. at 23. Defendants claim that the statement was not false because Plaintiff did not in fact step away after Abdalla asked her to do so. Reply Supp. Mot. Summ. J. at 7. Although it is a close call, the Court finds that Defendants are not entitled to summary judgment on this issue. First, as discussed above, a genuine issue of fact exists as to whether she failed to obey his instruction. Second, the statement, while strictly speaking truthful, is arguably incomplete, and a reasonable fact-finder could conclude that what is missing from the statement makes the statement misleading. The Second Circuit has held that fraudulent omission of factual information is not legally distinguishable from misstatements in the context of whether an investigating official fabricated evidence and was consequently denied fair trial. *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015), *cert. denied*, 137 S. Ct. 126, 196 L. Ed. 2d 42 (2016). By omitting the fact that Plaintiff stepped away after she was asked to do so the second time, the statement in the criminal complaint fails to acknowledge, as Defendants concede, that she was arrested after she had in fact started to move away.

The "likely to influence a jury's decision" element "is properly understood to require a showing of the materiality of the false information presented—that the information would likely influence the jury *if* it arrived at a jury." *Garnett*, 2015 WL 1539044 at *8 (emphasis in original). The operative question is whether fabricated information passed along to a prosecutor

*could* result in deprivation of liberty. *See Soomro*, 174 F. Supp. 3d at 815–16. The criminal

complaint contained three paragraphs of factual bases for the charges, and alleged that:

(1) Plaintiff did not move when Abdalla had asked her to, (2) Plaintiff screamed, and (3) Abdalla

asked Plaintiff for her identification five times, and she refused. Cassell-Stiga Decl. Ex. B.

Thus, the statement was one of the main allegations in the criminal complaint. Indeed, the fact

that Plaintiff initially refused to step back is the central basis of Defendants' argument in the

instant motion. Accordingly, the Court finds that the statement in the criminal complaint was

material in that it would likely influence the jury if it arrived at a jury, and could result in

deprivation of liberty.

　　　　Defendants also contend that Plaintiff cannot demonstrate that she suffered a deprivation

of liberty as a result of the alleged fabrication of evidence. Mem. Supp. Mot. Summ. J. at 16-17.

Plaintiff alleges that she was deprived of liberty when she was arrested without probable cause,[6]

was forced to appear in court twice, and was bound by New York Criminal Procedure Law

§ 510.40, which limited her ability to travel. Opp. Mot. Summ. J. at 23; Supp. Opp. Summ. J. at

6, 8. Ultimately, she accepted an ACD. Plaintiff argues that under the Second Circuit's decision

in *Garnett*, she need not establish deprivation of liberty that would amount to a seizure under the

Fourth Amendment. Defendants argue that the post-arrest consequences in the instant action are

not enough to constitute a deprivation of liberty and rely on a series of cases that analyze the

deprivation of liberty prong of a denial of a right to a fair trial claim as essentially the same as

the deprivation of liberty prong of a malicious prosecution claim, which arise from the Fourth

Amendment.

---

[6] Plaintiff's arrest is not relevant to her fair trial claim. A fair trial claim accrues when the officer forwards the false information to prosecutors, which is not alleged to have happened here until after her arrest. *Garnett*, 2015 WL 1539044 at *4.

Plaintiff is correct that a fair trial claim based on fabrication of evidence does not arise from the Fourth Amendment; instead, it arises from the Fifth, Sixth and/or Fourteenth Amendments. *Garnett*, 838 F.3d at 276 n. 6; *Morse*, 804 F.3d at 547 n.7. Thus, although malicious prosecution and fair trial claims may stem from the same facts, they are distinct, non-duplicative claims that may brought simultaneously. *See Ricciuti*, 124 F.3d at 129–31; *see also Perez v. Duran*, 962 F. Supp. 2d 533, 543 (S.D.N.Y. 2013). However, Defendants are also correct that courts have analyzed the liberty deprivation prong under the two claims similarly. *See e.g. Perez*, 962 F. Supp. 2d at 543-44 (finding sufficient liberty deprivation for the fair trial claim because it had found sufficient liberty deprivation for the malicious prosecution claim); *Gomez v. City of New York*, No. 16 Civ. 1274 (NGG) (LB), 2017 WL 1034690, at *9 (E.D.N.Y. Mar. 16, 2017) (examining malicious prosecution cases to analyze the liberty deprivation prong for a fair trial claim). Therefore, in determining whether there was sufficient deprivation of liberty for Plaintiff's fair trial claim, the Court finds instructive case law that examines this prong for malicious prosecution claims as well as fair trial claims.

Contrary to Defendants' assertion, the post-arrest consequences in the instant action constitute sufficient liberty deprivation in light of the relevant case law. The Second Circuit has noted that "any post-arraignment deprivation of liberty (such as being bound-over for trial)" is sufficient to satisfy the deprivation of liberty prong. *Singer*, 63 F.3d at 117; *see also Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (noting that the Second Circuit has consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers deprivation of liberty). Thus, while "issuance of a pre-arraignment, non-felony summons that merely requires a later court appearance does not constitute [liberty deprivation], the requirement that a plaintiff appear in

court, post-arraignment, in connection with criminal proceedings, does constitute [liberty deprivation]." *MacPherson v. Town of Southampton*, No. 07-CV-3497 DRH AKT, 2013 WL 6058202, at *5 (E.D.N.Y. Nov. 14, 2013). Indeed, at least one court has found sufficient liberty deprivation where the arrestee was arraigned and was subsequently required to make one other court appearance. *Willis v. City of New York*, No. 12 Civ. 5259 (RA), 2015 WL 556884, at *8 n. 9 (S.D.N.Y. Feb. 9, 2015).

Furthermore, an arrestee is also deprived of liberty when subject to Section 510.40 restrictions. Section 510.40 states that "[u]pon ordering that a principal be released on his own recognizance, the court must direct him to appear in the criminal action or proceeding involved whenever his attendance may be required and to render himself at all times amenable to the orders and processes of the court." N.Y. Crim. Proc. Law § 510.40. The Second Circuit has held that under Section 510.40, an arrestee released on his own recognizance "must ordinarily remain in the state." *Rohman v. N.Y. City Transit Auth. (NYCTA)*, 215 F.3d 208, 216 (2d Cir. 2000); *see also Perez*, 962 F. Supp. 2d at 542 ("[T]he plaintiff's release on his own recognizance necessarily required the plaintiff to comply with travel restrictions"). Since the imposition of Section 510.40 *necessarily* imposes a travel restriction, evidence that a plaintiff was subject to Section 510.40 is enough to demonstrate that travel was restricted.

Here, the desk appearance ticket summoned Plaintiff for an arraignment, and Defendants conceded at Oral Argument that Plaintiff was arraigned in her first court appearance, thereby making her second court appearance a post-arraignment appearance. *See* Cassell-Stiga Decl. Ex. A. Defendants further conceded at Oral Argument that Plaintiff was subject to Section 510.40, including its attendant travel restriction. Based on these facts, the Court denies Defendants' motion for summary judgment on Plaintiff's fair trial claim.

### D. Municipal Liability

The Declaration of Cassell-Stiga, notes that Plaintiff voluntarily dismisses her *Monell* claim. Cassell-Stiga Decl. ¶ 9. Furthermore, in Plaintiff's Opposition to Defendants' Motion for Summary Judgment, she fails to address the *Monell* claim at all. Accordingly, Plaintiff's *Monell* claim against the City of New York is dismissed.

## IV.   Conclusion

Defendants' motion for summary judgment regarding Plaintiff's *Monell* claim against the City of New York is GRANTED and the rest of their motion for summary judgment is DENIED.

The parties are directed to appear for a status conference on August 17, 2017 at 10:30 a.m. The Clerk of Court is respectfully directed to terminate the motion, Doc. 36.

It is SO ORDERED.

Dated:      August 10, 2017
            New York, New York

                                        Edgardo Ramos, U.S.D.J.